## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-62005-CIV-ALTONAGA/Brown

**ANGELEKE SARIDAKIS**,

     Plaintiff,

vs.

**SOUTH BROWARD HOSPITAL DISTRICT**,

     Defendant.

_____/

### ORDER

THIS CAUSE is before the Court on Motion by Defendant, South Broward Hospital District ("South Broward"), for Summary Judgment [D.E. 58], filed on October 19, 2009. The Court has carefully considered the parties' written submissions, pertinent portions of the record, and applicable law.

### I. BACKGROUND

This case involves claims of discrimination and retaliation in the workplace. Plaintiff, Angeleke Saridakis ("Saridakis"), was employed by South Broward as a trauma surgeon beginning in November 2001. (*See* Defendant's Statement of Undisputed Facts ("*Defendant's Facts*") [D.E. 59] at ¶ 6; *see* Plaintiff's Statement of Facts in Dispute ("*Plaintiff's Facts*") [D.E. 73] at ¶ 6). When Saridakis began her employment at South Broward, her supervisor was Lawrence Lottenburg, M.D. ("Lottenburg"), Director of Trauma Services. (*See Plaintiff's Facts* at ¶ 5). Lottenburg was replaced as Director of Trauma Services by Eddy Carrillo, M.D. ("Carrillo") in October 2003, at which time Carrillo became Saridakis's supervisor. (*See id.*). Carrillo reported to J.E. Piriz

Case No. 08-62005-CIV-ALTONAGA/Brown

("Piriz"), Administrator for South Broward at the time.  (*See id*.).

### A.      Saridakis's Work History

South Broward claims Carrillo had concerns dating back to 2002 regarding Saridakis's abilities in certain areas: laparoscopy skills, thoracic skills, and vascular skills.  (*See Defendant's Facts* at ¶ 8).  Saridakis disputes she had any performance issues as to these skills, and notes that prior to coming to South Broward, she had completed a trauma fellowship at Shock Trauma at the University of Maryland, one of the premier training institutes in the world.  (*See Plaintiff's Facts* at ¶ 8).  South Broward also asserts Carrillo had concerns with Saridakis's performance as to lateness for rounds, clinic, and teaching activities, as well as her efficiency.  (*See Defendant's Facts* at ¶ 8).

Saridakis received annual performance evaluations during her employment with South Broward.  (*See id*. at ¶ 9).  Saridakis was given "needs improvement" ratings by Lottenburg and Carrillo in the following areas: (1) uses time effectively and efficiently; (2) supports team decisions and recognizes validity of others' viewpoints; (3) interpersonal communication skills; (4) develops and maintains positive working relationships with co-workers; (5) minimizes conflict when dealing with problems; and (6) treats others with respect, dignity, courtesy, and integrity.  (*See id*.).  Saridakis also received many ratings of "exceeds standards" in other areas.  (*See Plaintiff's Facts* at ¶ 9).  Saridakis had conflicts on two particular occasions with ICU nurses.  (*See id*. at ¶ 10).  Complaints by nurses about members of the trauma team were not uncommon.  (*See id*.).

In October 2002, Chief Medical Officer Stanley Marks, M.D. ("Marks), Piriz, and Lottenburg had a meeting with Saridakis in which they discussed a patient who Saridakis had treated without first obtaining his consent.  (*See Defendants Facts* at ¶ 11).  The patient had a psychiatric disorder

Case No. 08-62005-CIV-ALTONAGA/Brown

and refused to provide consent for treatment of a stab wound to his abdomen.  (*See Plaintiff's Facts* at ¶ 11).  Saridakis had obtained administrative consent to perform the procedure, which was proper protocol under the circumstances.  (*See id*.).  During the meeting with Marks, Piriz, and Lottenburg, Saridakis agreed she should have made a more thorough and clear entry in the patient's medical chart; her decision to perform the procedure was not at issue.  (*See* Deposition of Angeleke Saridakis Volume I ("*Plaintiff's Dep. I*") [D.E. 73-74] at 63-64.  At the same meeting, Piriz expressed concerns that some people had characterized Saridakis as having "explosive" behavior and suggested she seek professional help for anger management. (*See id*. at 68-69).  However, Piriz did not provide Saridakis with any concrete examples of her "explosive" behavior.  (*See id*. at 71).

In November or December of 2004, an individual made a complaint about Saridakis which was reported to Marks.  (*See id*. at 172).  The person stated that Saridakis was speaking about private patient information in a public place.  (*See id*.).  Marks had a meeting with Saridakis about the incident, and Saridakis agreed the she had committed an indiscretion.  (*See id*. at 173).

South Broward claims Carrillo witnessed and heard complaints about Saridakis regarding the following issues: refusal to work with Trauma Team and Operating Room staff, failure to complete paperwork, failure to ensure adequate on-call coverage, failure to coordinate scheduling of surgeries, and tardiness.  (*See Defendant's Facts* at ¶ 14).  Saridakis disputes these claims, maintaining that she failed to provide coverage on only one occasion, and that male trauma surgeons who missed coverage were not chastised.  (*See Plaintiff's Facts* at ¶ 14).  Saridakis similarly claims that male surgeons who behaved comparably to her were not found wanting by Carrillo.  (*See id*.).

3

Case No. 08-62005-CIV-ALTONAGA/Brown

Carrillo claims he learned of a complaint made against Saridakis concerning her behavior with a patient.  (*See Defendant's Facts* at ¶ 15).  Carrillo received an incident report in which Saridakis was identified as demanding that life support be withdrawn from a patient because she "needed beds."  (*See id.*).  Saridakis denies she ever made such a statement.  (*See Plaintiff's Facts* at ¶ 15).  In January 2004, Carrillo met with Saridakis concerning complaints from staff.  (*See Defendant's Facts* at ¶ 16).  Carrillo felt Saridakis was insubordinate during the meeting and issued a written counseling to Saridakis.  (*See id.*).  In October 2004, Saridakis misdiagnosed a cancerous mass in a patient's thyroid as benign, when the biopsy results were actually "inconclusive."  (*See id.* at ¶ 17).  Saridakis apologized for the error.  (*See Plaintiff's Facts* at ¶ 17).

Saridakis performed certain thyroid surgeries for some time with the support of Carrillo.  (*See id.* at ¶ 18).  Carrillo later decided to distribute these surgeries among the trauma team.  (*See id.*).  Saridakis held the position of research coordinator for the trauma team.  Carrillo claims Saridakis resigned from that position; Saridakis agrees that Carrillo sent her a letter accepting her resignation, but claims she never resigned from the position.  (*See id.* at ¶ 19; *see Defendant's Facts* at ¶ 19).  South Broward asserts Saridakis accessed another employee's files in connection with the rescheduling of thyroid surgeries; Saridakis denies ever accessing another employee's files.  (*See Plaintiff's Facts* at ¶ 20; *see Defendant's Facts* at ¶ 20).

Carrillo claims he received complaints about Saridakis not completing paperwork, being unavailable to coordinate scheduling, being late to clinic, and creating disruptions in the operating room.  (*See Defendant's Facts* at ¶ 21).  Saridakis disputes that these incidents occurred.  (*See Plaintiff's Facts* at ¶ 21).  She further claims that after her complaint to Carrillo about gender

Case No. 08-62005-CIV-ALTONAGA/Brown

discrimination in the summer of 2005, negative information about her began to circulate among certain staff members. (*See id*.). South Broward additionally claims Saridakis was late to rounds, failed to attend meetings, and missed a lecture she was presenting. (*See Defendant's Facts* at ¶¶ 24-26). Saridakis does not deny she was ever late for rounds, but counters that all attending surgeons are occasionally late for rounds. (*See Plaintiff's Facts* at ¶ 24). She agrees that she missed a lecture, but explains she was in surgery at the time the lecture was scheduled. (*See id*.). Saridakis further notes that other trauma surgeons failed to attend meetings. (*See id*. at ¶ 25).

### B.      Saridakis's Compensation

Saridakis had negotiated a compensation contract with South Broward that started her at $170,000 per year, and increased to $210,000, $220,000, and $235,000 for the following three years, respectively. (*See Plaintiff's Dep. I* at 122-123). A male colleague, Dr. Lama ("Lama"), had a contract that also started at $170,000 per year, with increases to $200,000, $250,000, and $275,000 for the following three years, respectively. (*See id*.). In July 2004, Saridakis sent a memorandum to Carrillo expressing concerns that her pay was not comparable to Lama's. (*See* July 2004 Memorandum from Saridakis to Carrillo ("*July 2004 Memo*") [D.E. 73-43]). In this memorandum, Saridakis wrote:

> As we discussed, if you compare my salary over the relevant contract term to that of Teo's, I end up earning approximately $55,000 less even though, with all due respect to Teo who is a fine and capable surgeon, I am more senior with more experience and a broader range of skills. Although, arguably, I should probably be earning more than Teo over the contract term, I am willing to earn about the same, but feel it is simply not fair for me to earn substantially less. Under my proposal, I would earn $25,000 more over the contract term than the figures you provided, but, again, this would still be less than the amount earned by Teo over his contract term.
>
> Please understand that I am not ungrateful for my position or my salary. I know that

5

Case No. 08-62005-CIV-ALTONAGA/Brown

> I am well compensated for my work, but also know that I work hard for my compensation. This is not about me earning as much as I can get, but is instead about earning a comparable salary to my colleagues for doing comparable work.

(*Id*.).  Carrillo asked Saridakis to submit a salary proposal, which she did.  (*See Defendant's Facts* at ¶ 36; *see Plaintiff's Facts* at ¶ 36).  South Broward then increased her salary.  (*See Defendant's Facts* at ¶ 37; *see Plaintiff's Facts* at ¶ 37).

On August 5, 2004, Saridakis sent a letter to Piriz expressing continuing salary concerns.  She wrote:

> I appreciate the opportunity to express my concerns to you today.  I would like to reiterate that I really want to stay in the Memorial Regional family and toward that end would like to pursue whatever course of action you can recommend toward the resolution of the discrepant salary issue.
>
> * * *
>
> Please bear in mind that at the beginning of year one, I had 2 years of experience as an attending and had completed my boards in general surgery and critical care. Additionally, I had earned my MPH.  My junior partner had just completed fellowship prior to year one and will not be board certified in critical care until middle of year two.
>
> Teo requested 200,000 in Year two and 250,000 in Year three.  In his recent contract he was given 225/250/275 for years 2/3/4.  He will receive $25,000 more than he requested.
>
> I requested 300,000 in Year [sic] 4 and 5.  I was offered 275/300 for years 4/5.  I am being offered $25,000 less than I requested.

(August 5, 2004 Letter from Saridakis to Piriz ("*August 2004 Letter*") [D.E. 73-41]).

**C.    Saridakis's Complaints**

In the summer of 2005, Saridakis complained to Lorrie Jones ("Jones"), Director of Human Resources for South Broward, that Carrillo was creating a hostile work environment.  (*See*

6

Case No. 08-62005-CIV-ALTONAGA/Brown

*Defendant's Facts* at ¶ 40; *see Plaintiff's Facts* at ¶ 40). Saridakis complained Carrillo was berating

her in public, treating her harshly, and demeaning her; Carillo treated her more harshly than her male

counterparts; and Carillo treated other female employees more favorably. (*See Defendant's Facts*

at ¶ 40; *see Plaintiff's Facts* at ¶ 40). Saridakis also mentioned she was afraid of retribution from

Carrillo if she spoke out against him. (*See Plaintiff's Facts* at ¶ 40). Saridakis told Jones that

Carrillo had threatened her if she interfered with him. (*See* Deposition of Lorrie Jones Volume I

("*Jones Dep. I*") [D.E. 73-69] at 68-69). Jones interviewed several individuals to determine whether

Carrillo had leadership problems, but took care that Carrillo did not find out she was investigating

him. (*See id.* at 86).

Following Jones's investigation, a meeting was held to discuss problems the staff was having

with Carrillo. (*See Defendant's Facts* at ¶ 42; *see Plaintiff's Facts* at ¶ 42). Present at this meeting

were Piriz and Director of Medical Affairs, Frederick Bushkin ("Bushkin"), along with members of

the trauma team, doctors Sykes, Lama, Habib, and Saridakis. (*See id.*). Piriz determined Carrillo

should be sent to leadership training. (*See id.* at ¶ 43).

In December 2005 or January 2006, Saridakis complained again to Jones about Carrillo. (*See

Defendant's Facts* at ¶ 45; *see Plaintiff's Facts* at ¶ 45). Saridakis claimed Carrillo gave her an

unfavorable evaluation in retaliation for the complaint she had made about him earlier in the year.

(*See id.*). Saridakis explained to Jones that she believed some of the problems Carrillo had with her

were gender related. (*See* Deposition of Angeleke Saridakis Volume II ("*Plaintiff's Dep. II*") [D.E.

73-75] at 147). Again in late January or early February, Saridakis told Jones Carrillo was retaliating

against her for the complaint against him the past summer. (*See Defendant's Facts* at ¶ 46; *see*

7

*Plaintiff's Facts* at ¶ 46). Saridakis stated she believed Carrillo "had a hard time with [her] as a strong woman, a woman that was not afraid of expressing her concerns and opinions regarding clinical issues affecting our team and our ability, in our efforts, to take care of trauma patients." (*Id.*). Saridakis claims she told a close friend she believed Carrillo was discriminating against her based on her gender. (*See Defendant's Facts* at ¶ 47; *see Plaintiff's Facts* at ¶ 47). In March 2006, Saridakis sent letters to Jones detailing the gender discrimination and retaliation she was suffering at the hands of Carrillo. (*See id.* at ¶ 48).

South Broward states Carrillo was never informed that Saridakis had complained about him until after he decided not to renew her contract. (*See Defendant's Facts* at ¶ 50). Saridakis disputes that assertion, claiming there were no secrets in the hospital, and Carrillo was certainly aware she had complained about him. (*See Plaintiff's Dep. II* at 149). In January or February of 2006, Jones met with Carrillo and Bushkin, and addressing letters written by Carrillo against Saridakis, asked Carrillo what he was trying to accomplish. (*See* Deposition of Lorrie Jones Volume II ("*Jones Dep. II*") [D.E. 73-70] at 29). It was because Saridakis had complained to Jones in writing that Jones met with Carrillo and showed him the letters. (*See* Deposition of Lorrie Jones Volume III ("*Jones Dep. III*") [D.E. 73-71] at 7).

According to South Broward, Saridakis first began to think Carrillo wanted to terminate her when she received her evaluation in 2004. (*See Defendant's Facts* at ¶ 51). Saridakis maintains she first believed Carrillo was retaliating against her when she received her 2005 performance evaluation. (*See Plaintiff's Facts* at ¶ 51).

Saridakis acknowledges that certain other female employees were treated favorably by

Case No. 08-62005-CIV-ALTONAGA/Brown

Carrillo, but maintains they were treated well because Carrillo was engaged in personal or sexual relationships with these women.  (*See Plaintiff's Facts* at ¶ 53).

### D.     Saridakis's Post-Employment Medical Staff Privileges

After the non-renewal of her contract with South Broward, Saridakis was credentialed to perform general surgery at all South Broward hospitals from November 2007 through November 2009.  (*See Plaintiff's Facts* at ¶ 54).  In 2008, however, she was informed that she would have to reapply for the second year.  (*See id*.).  In October 2008, Saridakis was re-credentialed for Pediatric Surgery and Adult Surgery for a 30-day period.  (*See id*.).  On October 24, 2008, she was approved for six months.  (*See id*.).  In January and April, 2009, Saridakis was re-credentialed for six month periods.  (*See id*.).  Plaintiff has been re-credentialed only for general surgery, not for trauma surgery.  (*See id*. at ¶ 55).

Marks is responsible for re-credentialing staff members.  (*See* Deposition of Stanley Marks ("*Marks Dep.*") [D.E. 73-81] at 16-17).  Marks states it was not uncommon for physicians to be re-credentialed for one-month periods, but was unable to name any physician other than Saridakis who had been so credentialed.  (*See id*. at 96-98).

After Saridakis's contract was not renewed, Carrillo changed hospital procedure such that trauma surgeries would be performed only by in-house staff, and not by on-call physicians.  (*See* April 21, 2009 email from Saridakis to Carrillo [D.E. 73-60]).  In 2009, Saridakis requested that she be allowed to take trauma surgeries on an on-call basis.  (*See id*.).  She was informed of the change in policy which precluded her from performing trauma surgeries at South Broward.  (*See* April 14, 2009 Letter from Marks to Saridakis [D.E. 73-61]).

Case No. 08-62005-CIV-ALTONAGA/Brown

### E.     The Lawsuit

On August 3, 2006, Saridakis was informed that her employment contract with South Broward would not be renewed for the following term.  (*See Defendant's Facts* at ¶ 30).  She was paid for the remainder of her contract, but relieved of her duties as an attending trauma surgeon. (*See id*.).

On December 15, 2008, Saridakis filed suit against South Broward, and filed an Amended Complaint on April 7, 2009.  Saridakis brings six counts against South Broward: Count I, sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq*.; Count II, retaliation in violation of Title VII; Count III, sex discrimination under the Florida Civil Rights Act (the "FCRA"), Fla. Stat. § 760.11(5); Count IV, retaliation in violation of the FCRA; Count V, violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and Count VI, retaliation in violation of the EPA.  South Broward seeks summary judgment as to all counts of the Amended Complaint.

## II.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

Case No. 08-62005-CIV-ALTONAGA/Brown

## III.  ANALYSIS

A.      **Sex Discrimination in Violation of Title VII; Sex Discrimination in Violation of the FCRA**[1]

In order to succeed on a claim of sex discrimination under Title VII or the FCRA, a plaintiff must first establish a prima facie case, which requires a showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably. *Nicholas v. Bd. of Trustees of Univ. of Alabama*, 251 F. App'x 637, 643 (11th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse action. *Jiann Min Chang v. Ala. Agric. & Mech. Univ.*, No. 09-11290, 2009 WL 3403180, at *2 (11th Cir. Oct. 23, 2009). If the defendant meets this burden, then the plaintiff must show the proffered reason is merely a pretext for discrimination. *Id.*

1.      The Prima Facie Case

The parties do not dispute the fact that Saridakis is a member of a protected class. The parties do dispute whether Saridakis has established the remaining three prongs of the prima facie case. South Broward claims Saridakis cannot prove she was qualified for her position, that she

---

[1] FCRA claims are subject to the same analysis as Title VII claims. *See Valenzuela v. GlobeGround North Am., LLC*, 18 So. 3d 17, 21-22 (Fla. 3d DCA 2009) ("Because the FCRA is patterned after Title VII of the Civil Rights Act of 1964 . . . we look to federal case law. . . . It is well-settled law that Florida courts follow the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny, for establishing, by circumstantial evidence, a discrimination claim based on disparate treatment in the workplace.") (internal citations omitted).

Case No. 08-62005-CIV-ALTONAGA/Brown

suffered an adverse employment action, or that Defendant treated similarly situated male employees differently.

An individual is "qualified" for a position, for purposes of employment discrimination law, if she meets the criteria that the employer has specified for the position. *Wright v. Southland Corp.*, 187 F.3d 1287, 1301 n.16 (11th Cir. 1999) (citation omitted). The Eleventh Circuit also recognizes service for an extended period without complaint to establish that an individual is qualified for a position. *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520 (11th Cir. 1990) (citing *Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1293-94 (11th Cir. 1989). South Broward maintains Saridakis was not qualified for her position as trauma surgeon because she did not complete paperwork on time, failed to ensure on-call coverage, failed to coordinate scheduling of surgeries, and was tardy. South Broward also notes certain incident reports in which other staff members questioned Saridakis's patient care and behavior. These failings, claims South Broward, render Saridakis not qualified for the position of trauma surgeon.

Saridakis notes she had been employed by South Broward as a trauma surgeon for almost six years before her termination. While her evaluations were not perfect, she regularly received more "exceeds standards" ratings than any other category. After her contract was not renewed, Saridakis continued to perform surgery at South Broward and remains credentialed there. Her obvious competence and tenure for a total of almost nine years creates the inference that Saridakis is qualified as a trauma surgeon. Saridakis further notes that prior to her employment at South Broward, Saridakis had completed a trauma fellowship at Shock Trauma at the University of Maryland, one of the premier trauma training institutes in the world. Her performance evaluations consistently

Case No. 08-62005-CIV-ALTONAGA/Brown

rated her highly in clinical competence, and no complaints about her abilities as a trauma surgeon were ever put in writing.

Facts are in dispute as to whether, and to what extent, Saridakis was deficient in time management, interpersonal communications, or ensuring coverage. While South Broward suggests an ongoing problem with Saridakis, that suggestion comes almost exclusively from the testimony of Carrillo, whose behavior toward Saridakis is at issue in this lawsuit. Saridakis's testimony refutes Carrillo's assertions of her deficiencies. For example, while South Broward claims Saridakis's failure to ensure adequate on-call coverage is a reason for dismissal, Saridakis counters that she failed to ensure coverage on one occasion in almost six years. Saridakis further contends that while she may have missed a meeting or two, and occasionally had scheduling difficulties, the same can be said for every other member of the trauma team.

The evidence reveals that Saridakis was, at the least, technically competent as a trauma surgeon. The question of whether other behavioral factors render her unqualified for her position at South Broward is in dispute. Accordingly, viewing the facts in the light most favorable to Saridakis, she is qualified for her position, and thereby satisfies the second element of her prima facie case of sex discrimination under Title VII and the FCRA.

Relying on *Gourdine v. Cabrini Medical Center*, 307 F. Supp. 2d 587 (S.D.N.Y. 2004), *aff'd in part*, 128 F. App'x 780, 782 (2d Cir. 2005), South Broward argues Saridakis has not suffered an adverse employment action. In *Gourdine*, the district court made the decision that the non-renewal of a term contract was not an adverse action because the contract was fixed for a specific limited period and made no guarantees that employment after that period would be offered. *Id*. at 595.

13

Case No. 08-62005-CIV-ALTONAGA/Brown

Notably, the court in *Gourdine* cited no authority for its decision.  South Broward claims that, based on *Gourdine*, the Court cannot find Saridakis has suffered an adverse employment action by virtue of the non-renewal of her contract with South Broward.

Saridakis cites numerous cases in which courts have found the non-renewal of an employment contract to constitute an adverse employment action: *Hernandez-Mejias v. General Elec.,* 428 F. Supp. 2d 4, 8 (D.P.R. 2005) (noting that, as even at-will employees and job applicants are entitled to Title VII protection, non-renewal of an employment contract constitutes an adverse employment action.); *Kassaye v. Bryant College,* 999 F.2d 603, 607 (1st Cir.1993) (although dismissing the suit for untimeliness of the claim, the court considered a refusal to renew an employment contract as grounds for a Title VII complaint); *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir. 2002) (finding, in contract-renewal Title VII case, that non-renewal of a teaching contract constitutes an adverse employment action); *Walker v. Bd. of Regents of Univ. of Wis. Sys.,* 300 F. Supp. 2d 836, 851-52 (W.D. Wis. 2004) (collecting cases, holding non-renewal is an adverse employment action under Title VII); *Flores-Suarez v. Turabo Med. Ctr. P'ship,* 165 F. Supp. 2d 79, 91 (D.P.R. 2001) (fact that employee had a term contract did not preclude discrimination action); *Meadows v. State Univ. of N.Y. at Oswego,* 160 F.R.D. 8, 12 (N.D.N.Y.1995) (considering decision not to renew contract as adverse employment action).

South Broward complains that none of the cases cited by Saridakis are binding, Eleventh Circuit precedent.  Notably, neither are the cases relied on by South Broward.  In the absence of binding precedent, the Court looks to other circuits, and notes the majority of courts in recent years have deemed non-renewal the equivalent of termination, and therefore an adverse employment action

14

for purposes of a Title VII discrimination analysis.  Moreover, several courts, in their analysis, have pointed out that employees with renewable contracts are much like "at-will" employees, who may be terminated without cause at any time; in spite of the tenuous nature of their employment, at-will employees enjoy protection under Title VII, and the termination of an at-will employee is an adverse employment action for Title VII purposes.  *See, e.g.*, *Hernandez-Mejias,* 428 F. Supp. 2d at 8; *Walker*, 300 F. Supp. 2d at 852.  Given this persuasive reasoning along with the weight of authority on the subject, the Court finds Saridakis suffered an adverse employment action and satisfies the third prong of her prima facie case.

The final prong of the prima facie case requires that Saridakis show she was treated less favorably than similarly situated male employees.  "To determine whether another employee was similarly situated, we consider whether that employee was 'involved in or accused of the same or similar conduct' and disciplined in a different manner."  *Escarra v. Regions Bank*, No. 09-11073, 2009 WL 4111131, at *3 (11th Cir. Nov. 27, 2009) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  "In doing so, 'the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  *Id*. (quoting *Maniccia*, 171 F.3d at 1367).  "To show that employees are similarly situated, the plaintiff must establish that the employees are 'similarly situated in all relevant respects.'"  *Daniels v. Hale*, No. 09-10927, 2009 WL 3418586, at *4 (11th Cir. Oct. 26, 2009) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).

Saridakis offers two comparators who she claims were similarly situated to her, but who received more favorable treatment: Habib and Lama.  South Broward argues neither Habib nor Lama

Case No. 08-62005-CIV-ALTONAGA/Brown

is an appropriate comparator.  As to Habib, South Broward claims he may not serve as a comparator for Saridakis because he is an employee of the University of Miami and is contracted out by the University to work at South Broward.  South Broward cites *Ahern v. Shinseki*, No. 05-117-ML, 2009 WL 1615402 (D.R.I. June 9, 2009) in support of its position.  In *Ahern*, the court held that female plaintiffs who were full-time staff employees could not use male contract employees as comparators to show that they were being discriminated against in compensation.  *See id*. at *2.  The court explained that the contract employees could not serve as comparators as to compensation because:

> Plaintiffs as full-time employees of a federal agency enjoyed fringe benefits, including paid vacation time, health insurance and retirement benefits.  By contrast, the higher paid contract technologists were self-employed, with no rights under the federal personnel system, no fringe benefits and they served only for temporary contract terms.  It is beyond dispute that Plaintiffs, as employees, were not similarly situated to the contract technologists.

*Id*.  The reasoning in *Ahern* is not applicable here, however, because Saridakis is attempting to use Habib as a comparator to show he was treated more favorably by Carrillo in areas other than compensation.  While Habib may be entirely inappropriate as a compensation comparator, he may be used as a comparator as to Carrillo's treatment of male and female employees.

As to Lama, South Broward states he did not engage in the same misconduct.  In *Abbes v. Embraer Servs., Inc.*, the court explained, "[a]n employee who committed multiple infractions is not similarly situated to an employee who committed one infraction."  No. 05-16439, 195 F. App'x 898, 900 (11th Cir. 2006) (citation omitted).  According to South Broward, Saridakis had a "history of uncooperative and confrontational conduct," and her "clinical performance was also deficient on several occasions."  (*Defendant's Mot*. at 5).  Lama, claims South Broward, had a record "devoid of the repeated, disruptive misconduct in which Plaintiff was engaged," and "[w]hile Lama had one

16

Case No. 08-62005-CIV-ALTONAGA/Brown

incident report for being ten minutes late to surgery, a single incident does not equate to Plaintiff's multiple incident reports."  (*Id*. at 6)

South Broward overstates the negative in Saridakis's employment history, and glosses over the negative in Lama's.  Saridakis repeatedly received excellent performance evaluations, particularly as to her clinical aptitude.  She did have some areas in which "needs improvement" was noted, but most of the staff had some areas with that rating.  Saridakis claims she was publicly berated by Carrillo far more often than was Habib or Lama.  Saridakis notes that while she was criticized by Carrillo for not attending activities at Mt. Sinai Medical Center, both Habib and Lama, who also did not attend, were not similarly criticized.  Carrillo admitted to having issues with Lama's commitment to patient care and had meetings with Lama and Bushkin regarding Lama's apparent lack of commitment.  Carrillo stated he wanted Lama "to be more inclusive in the program," and to "be held more accountable when he was asked to come and see his patients." (Deposition of Eddy Carrillo ("*Carrillo Dep.*") [D.E. 73-77] at 237-238).   Nonetheless, Lama received no written counseling from Carrillo.  Saridakis claims that although Carrillo referred to her as "explosive" in her interaction with staff, her behavior and tone were comparable to that of the male physicians on staff, including Habib and Lama.[2]

The record contains testimonial evidence presented primarily from Saridakis and Carrillo, each of whose statements supports their respective positions on this issue.  Viewing the disputed

---

[2] It is also worth noting that while Lama, in particular, received overall better performance evaluations that Saridakis, Carrillo was responsible for preparing the evaluations.  If, as Saridakis claims, she was being treated less favorably than male trauma surgeons by Carrillo, this disparate treatment could very well have manifested itself in unfavorable evaluations.

Case No. 08-62005-CIV-ALTONAGA/Brown

facts in the light most favorable to Saridakis, the record supports her assertion that she was treated less favorably than similarly situated male employees.  Accordingly, Saridakis has established each prong of a prima facie case of gender discrimination under Title VII and the FCRA.

### 2.   Legitimate, Non-Discriminatory Reason

Because Saridakis has established a prima facie case, the burden shifts to South Broward to set forth a legitimate, non-discriminatory reason for the non-renewal of Saridakis's contract.  *See Jiann Min Chang*, 2009 WL 3403180, at *2.   South Broward asserts Saridakis's record of insubordination, clinical errors, tardiness, and confrontational behavior are a legitimate, non-discriminatory reason to choose not to renew her contract.  Saridakis acknowledges that the burden on an employer to set forth a legitimate, non-discriminatory reason is "exceedingly light," and concedes that South Broward has met its burden.  She argues, however, that the proffered reasons do not hold up to scrutiny and are in fact pretextual.

### 3.   Pretext

Once an employer has met its burden of providing a legitimate, non-discriminatory reason for the adverse action, the burden is once again on the plaintiff to show the proffered reason is pretextual.  *See Jiann Min Chang*, 2009 WL 3403180, at *2.  "A plaintiff may show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Corbitt v. Home Depot U.S.A., Inc.*, No. 08-12199, 2009 WL 4432654, at *20 (11th Cir. Dec. 4, 2009) (internal quotation marks and citations omitted).  "'[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's

Case No. 08-62005-CIV-ALTONAGA/Brown

articulated reasons for its decision are not believable.'" *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Howard v. BP Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994)).  "In evaluating a summary judgment motion, '[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.*  (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Saridakis demonstrates pretext in a number of ways.  First, she argues that South Broward's proffered reason for not renewing her contract is simply not worthy of credence.  South Broward notes a history of insubordination, confrontation, and clinical errors on the part of Saridakis: a veritable host of problems with her employment.  And yet, as Saridakis points out, she was employed by South Broward for almost six years and enjoyed contract renewals throughout that period.  If her behavior from the inception of her employment was so bad, she argues, what reasonable employer would have continued her in its employ?  In response to this argument, South Broward claims her behavior worsened over time to the point it became intolerable, resulting in the decision not to renew her contract.  However, this position contradicts South Broward's earlier argument that Saridakis was a problematic employee from the beginning.  Such a contradictory position raises questions as to the legitimacy of South Broward's proffered reason for terminating Saridakis.  A reasonable fact-finder could infer that South Broward's proffered reason is, in fact, pretextual.

Moreover, at the time of her termination, Saridakis was not informed of any of the reasons South Broward raises defensively in this lawsuit.  Instead, she was simply told by Carrillo that he

Case No. 08-62005-CIV-ALTONAGA/Brown

had a "vision for the department," and Saridakis was not a "part of" that vision.  Had Carrillo truly

believed Saridakis to be inefficient, insubordinate, and suffering from an attitude problem, why not

simply tell her instead of offering such a nebulous statement as the reason for termination?  Only

after Saridakis filed suit did Carrillo come forward with concrete examples of Saridakis's many

failings.  A reasonable fact-finder may find these inconsistencies to be evidence of pretext.

Viewing the evidence in the record in the light most favorable to Saridakis, South Broward

has failed to demonstrate that it is entitled to summary judgment as a matter of law on Saridakis's

claims of sex discrimination under Title VII and the FCRA.

### B.      Violation of the Equal Pay Act

The Equal Pay Act prohibits sex-based discrimination in compensation, and provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

The Eleventh Circuit has explained that

[i]n evaluating a claim under the Equal Pay Act,

> "[o]nly the skills and qualifications actually needed to perform the jobs are considered. Comparators' prior experience is not relevant to the substantially similar inquiry.  The examination also rests on

20

Case No. 08-62005-CIV-ALTONAGA/Brown

> primary, as opposed to incidental or insubstantial job duties.  Job
> titles are a factor for consideration, but are not dispositive.  The
> plaintiff need not prove that her job and those of the comparators are
> identical; the test is one of substantiality, not entirety.  Nonetheless,
> in EPA cases the standard for determining whether jobs are equal in
> terms of skill, effort, and responsibility is high."

*Gresham v. City of Florence, Ala.*, 319 F. App'x 857, 866 (11th Cir. 2009) (quoting *Mulhall v.*

*Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994)).

South Broward asserts Saridakis's claim under the Equal Pay Act is unsupported and frivolous because she was actually paid more, not less, than comparable male employees.[3]  South Broward points to one year in which Saridakis was earning $300,000 per year, and her colleagues were making $275,000 and $215,000, and claims this fact defeats Saridakis's claim under the Equal Pay Act.  This argument is disingenuous and an oversimplification of the facts.

Saridakis explains that in 2004 she discovered that a fellow trauma surgeon, Lama, had renewed his contract for the following three years at considerably higher rates than Saridakis.  While both surgeons were making $170,000 in their first year, Lama was to earn $225,000 and $250,000 in his second and third years, respectively, while Saridakis would earn $200,000 and $210,000 in years two and three, respectively, resulting in Saridakis earning $55,000 less than Lama over a two year period.[4]  Saridakis brought this disparity to the attention of Carrillo, who suggested she submit

---

[3] The parties also dispute whether Saridakis's claims under the Equal Pay Act are time-barred. Claims under the Act have a two-year statute of limitations, unless the discriminatory compensation was wilful.  Here, there are disputed factual issues as to whether South Broward's discriminatory compensation scheme was wilful.  Accordingly, summary judgment cannot be granted on the statute of limitations issue.

[4] While the job duties of Saridakis and Lama were comparable, Saridakis had more experience than Lama and was board certified earlier than Lama.  While experience is not necessarily an issue under the Equal Pay Act, a disparity where the lower paid employee is considerably more experienced is suggestive of a wilful violation.

Case No. 08-62005-CIV-ALTONAGA/Brown

a salary proposal, which she did.  South Broward then raised Saridakis's salary such that for the year noted by South Broward, Saridakis earned $300,000, and Lama $275,000.  The fact that South Broward raised Saridakis's wages after her complaint about disparate compensation does not render Saridakis's claim under the Equal Pay Act invalid if Saridakis was being paid less than a male employee for comparable work.  Because South Broward has not proven any of the four exceptions in 29 U.S.C. § 206(d)(1), it is not entitled to summary judgment on Saridakis' Equal Pay Act claim. *See Mulhall*, 19 F.3d at 591 (stating if any of the four exceptions is proven, "defendant is absolved of liability as a matter of law").

## C.  Retaliation in Violation of Title VII, the FCRA, and the Equal Pay Act

To state a prima facie claim of retaliation, Saridakis must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.[5] *Corbitt*, 2009 WL 4432654, at *14.

South Broward claims Saridakis did not engage in a statutorily protected activity, and so her claim of retaliation fails on the first prong.  According to South Broward, Saridakis did not clearly communicate to South Broward that she was objecting to sex discrimination in her complaints about Carrillo's treatment of her and about the disparity in compensation between herself and Lama. Citing *Verna v. Public Health Trust*, 539 F. Supp. 2d 1340, 1356 (S.D. Fla. 2008), South Broward states that an "employee cannot merely complain about a certain policy or behavior and rely on the

---

[5] As noted, the FCRA follows the analytical framework of Title VII. *Valenzuela*, 18 So. 3d at 21-22. Retaliation claims under Title VII and the Equal Pay Act require the same elements to establish a prima facie case.  *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).

employer to infer that discrimination has occurred.  An employee's complaint must <u>clearly</u> put an

employer on notice of a violation of law."  (*Defendant's Mot.* at 7-8) (emphasis in original).

While South Broward is correct that an employee's complaint cannot be so vague that an

employer is unaware the complaint concerns illegal discrimination, courts have recognized that an

employee need not use "magic words" in order to put the employer on notice.  A plaintiff "need not

. . . employ any magic words, such as discrimination, for the communication of a complaint of

unlawful discrimination . . . may be *inferred or implied* from the surrounding facts."  *Mazloum v.*

*District of Columbia*, 442 F. Supp. 2d 1, 13 (D.D.C. 2006) (internal quotation marks and citations

omitted, ellipses and emphasis in original).

Here, Saridakis first complained to Carrillo that she was not being paid as well as Lama,

although she was more experienced than Lama.  Saridakis need not have pointed out the obvious fact

that she was comparing herself to a male employee to demonstrate her complaint concerned a pay

disparity between a male and a female employee.  Saridakis later complained to Jones that Carrillo

treated her differently than the other trauma surgeons on the team.  Once again, the remaining trauma

surgeons she was addressing were male.  In her discussion with Jones, Saridakis used the term

"hostile work environment," which any human resources director would recognize relates to sex

discrimination under Title VII.  Finally, in a letter written in March 2006, Saridakis explicitly stated

she felt she was the victim of gender discrimination.  *Cf. Barber v. CSX Distrib. Servs.*, 68 F.3d 694,

701-02 (3d Cir. 1995) (letter to HR complaining about unfair treatment but not specifically

complaining about age discrimination is not protected activity).  Saridakis satisfies the prong of

having engaged in a statutorily protected activity for a retaliation claim.

Case No. 08-62005-CIV-ALTONAGA/Brown

Saridakis must next show she suffered an adverse employment action. As discussed, while South Broward argues that the non-renewal of a contract does not constitute an adverse employment action, the majority of courts, including this one, disagree. Moreover, retaliation cases have a more relaxed standard concerning what constitutes an adverse employment action than have standard discrimination cases. In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court enunciated a new standard for retaliation claims:

> Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions."

548 U.S. 53, 67 (2006). The Court clarified that under this new standard, a reasonable employee must "have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotations and citations omitted).

The non-renewal of a contract which an employee might reasonably expect to have renewed – particularly where the contract has been regularly renewed in the past – is the type of action which might dissuade a reasonable worker from making a charge of discrimination against her employer. Saridakis has therefore established she suffered an adverse employment action.

To complete her claim of retaliation, Saridakis must show a causal connection between the statutorily protected activity and the adverse action. Again, the parties dispute whether this element has been met. South Broward maintains Saridakis has not proven a causal connection for two reasons: (1) Carrillo and Piriz did not know about some of Saridakis's gender discrimination and pay

24

Case No. 08-62005-CIV-ALTONAGA/Brown

disparity complaints when they decided not to renew her contract; and (2) Saridakis's complaints

occurred too remotely in time from the decision not to renew to establish a causal link.

South Browrd is correct that a decision-maker must be aware of the employee's statutorily

protected activities in order to be liable for retaliation against an employee based on those activities.

*See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker

cannot have been motivated to retaliate by something unknown to him"). Moreover, while adverse

events occurring long after the statutorily protected activity was exercised generally do not support

a finding of causation, the mere lack of close temporal proximity does not sound the death knell of

plaintiff's retaliation claim.

South Broward cites *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001), and *Morris

v. Potter*, 251 F. App'x 667 (11th Cir. 2007), in support of its proposition that an interval of 18

months between a discrimination complaint and an adverse action causes Saridakis's retaliation

claim to fail as a matter of law. In *Morris*, the court stated: "'[a] plaintiff satisfies this element if

[s]he provides sufficient evidence of knowledge of the protected expression and that there was a

close temporal proximity between this awareness and the adverse . . . action.'" *Id.* at 669 (brackets

and ellipses in original) (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). The

court did not, however, state that a plaintiff may *only* establish causation through close temporal

proximity; it stated that is one method by which to establish causation by circumstantial evidence.

*See Brungart*, 231 F.3d at 799 ("The general rule is that close temporal proximity between the

employee's protected conduct and the adverse employment action is sufficient circumstantial

evidence to create a genuine issue of material fact of a causal connection.").

25

Case No. 08-62005-CIV-ALTONAGA/Brown

The Eleventh Circuit has held that a causal relationship will be found even after a long time period between the protected act and the adverse action where those events are temporally linked by a chain of retaliatory events. *Wideman v. Wal-Mart Stores*, 141 F.3d 1453 (11th Cir. 1998). In *Wideman*, the court held that in retaliation cases, a series of actions which may not rise to the level of an "ultimate employment decision" could demonstrate causation between the protected act and adverse action. *Id*. at 1456. The court explained, "[t]o establish the causal relation element of her prima facie case of retaliation, [plaintiff] need only show 'that the protected activity and the adverse action are not completely unrelated.'" *Id*. at 1457 (quoting *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

Here, South Broward does not deny Carrillo knew about Saridakis's original claim of disparate pay prior to his decision not to renew her contract; indeed, the record shows Saridakis communicated her desire for pay equity in writing to Carrillo in July 2004. However, South Broward claims Carrillo was not aware of Saridakis's complaint to Jones in the summer of 2005 when Carrillo decided not to renew Saridakis's contract. According to Carrillo, he decided not to renew the contract in late 2005. South Broward argues that because Carrillo was unaware of the summer 2005 complaint, he could not have been influenced by that complaint, and it further argues that the July 2004 complaint is too remote in time to demonstrate causation. South Broward's argument fails to persuade.

Saridakis has provided evidence that the non-renewal of her contract was not the only adverse action she suffered after her original complaint of pay disparity. Saridakis explains that after the initial complaint, Carrillo began to criticize her and berate her in public. While Carrillo had

26

Case No. 08-62005-CIV-ALTONAGA/Brown

previously assigned most, if not all, thyroid surgeries to Saridakis as her specialty, he later began to assign those surgeries among all trauma surgeons.  Saridakis had been research coordinator of the trauma team; according to Saridakis, Carrillo sent her a letter accepting her resignation as research coordinator when she had never even resigned from the position.  Carrillo then decided not to renew Saridakis's contract and relieved her of her duties without allowing her to work to the end of her contract term.  These facts demonstrate a chain of events sufficient to withstand South Broward's motion for summary judgment based on a failure to demonstrate causation.

Construing the facts in the light most favorable to Saridakis, South Broward has failed to establish that it is entitled to summary judgment on Saridakis's retaliation claim as a matter of law.

## IV.  CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that

1.      South Broward's Motion for Summary Judgment **[D.E. 58]** is **DENIED**.

2.      South Broward's Motion to Strike Plaintiff's Statement of Material Facts in Dispute **[D.E. 78]** is **DENIED as moot**.[6]

---

[6] South Broward raises some viable issues in its Motion to Strike.  For example, certain affidavits provided by Saridakis in support of her opposition to summary judgment were given by witnesses who were not timely disclosed to South Broward, and Saridakis's affidavit contradicts certain statements in her deposition.  But because the Court did not rely on any of the objectionable "facts" stated by Saridakis or the objected-to affidavits, the Motion to Strike is moot.

Case No. 08-62005-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of December, 2009.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

28